# District of Columbia
# Court of Appeals

**No. 16-AA-529**

WILLIE T. CRAFT,

Petitioner,



FILED

JAN 18, 2018

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.                                                                 0108321-1

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,
                 Respondent.


On Petition for Review of an Order of the
District of Columbia Water and Sewer Authority

BEFORE: Glickman and Thompson, Associate Judges, and Ferren, Senior Judge.

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs, and without presentation of oral argument. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the Hearing officer's decision is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: January 18, 2018.

Opinion by Senior Judge John M. Ferren.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-529

WILLIE T. CRAFT, PETITIONER,

v.

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY, RESPONDENT.

01/18/2018

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Petition for Review of an Order
of D.C. Water and Sewer Authority
(0108321-1)

(Submitted November 30, 2017                    Decided January 18, 2018)

Willie T. Craft, *pro se*.

*Randy McRae* submitted a brief as attorney for petitioner at the time the brief was filed.

*Emil Hirsch* and *Steven A. Pozefsky* filed the brief for respondent.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*:  Appellant Willie T. Craft seeks a refund of more than $77,000 from the DC Water & Sewer Authority ("DC Water") based on a billing dispute for the period January 1974 to January 2014.  The dispute concerns two adjacent lots in the 4300 block of Nannie Helen Burroughs Avenue, Northeast

(the "Craft lot" and "McDonald's"), which share a private service line from the water main. Because any application for a refund must be made within two years after an erroneous payment (as the hearing officer properly ruled),[1] we may consider Craft's claim only for the period beginning January 21, 2013, based on his Claim for Refund of Overpayments dated January 21, 2015. We affirm.

## I. Facts and Proceedings

The developer of the property covering both lots[2] installed one private, underground water service line, which originated on the Craft lot and serves not only the businesses there (a dry cleaner, flower shop, and daycare center), but also the neighboring McDonald's franchise. On January 21, 2015, Craft filed his claim for refund totaling somewhere between approximately $77,000 and several

---

[1] D.C. Code § 34-2401.10 (2001). At no time has Craft argued that this statute of limitations does not apply, or that if it ordinarily would apply, there was some equitable exception that could eliminate its application in this case.

[2] The developer was Golden Arch Realty, the "predecessor in interest" of McDonald's Real Estate Company, which owns the lot on which the McDonald's franchise at issue sits. *McDonald's USA, LLC v. Craft*, 263 F. Supp. 3d 56 (D.D.C. 2017).

hundred thousand dollars, based on alleged double-billing for McDonald's water.[3]

Craft alleged, more specifically, that all the water for both properties "ran first through [his] meter," and was charged to him, then "diverted to the McDonald's property, where it was metered again" and charged to McDonald's. Craft thus sought a refund of the dollars charged to him for McDonald's water.

On February 27, 2015, in a letter from Laura Preston, the utility's Customer Service Director, DC Water denied the claim on the ground that the problem was attributable to construction of a "shared water service line" for both properties. The denial letter stated that, with the exception of a malfunctioning water meter (not at issue here), DC Water's responsibility for maintaining infrastructure ends at the property line.[4] It explained DC Water's legal position as follows:

> In accordance with the Laws of the District of Columbia each property owner is responsible to construct, provide and maintain the plumbing and related appurtenances

---

[3] A previous claim alleging a faulty meter for water usage from July 2014 to October 2014, was dismissed because Craft did not appear at the hearing.

[4] 21 DCMR § 110.2 ("The Department [DC Water] shall maintain all water service pipes from the street main to the property line"); *id.* § 110.4 (property owner responsible for all maintenance on private property); *id.* § 300.1 (meters are owned by DC Water).

within the private property boundary for their own use. To our knowledge this has not been done. *At present Mr. Craft is responsible financially for all water use recorded on the meter assigned to his account*. In order for there to be two separate accounts, two separate lines from our water main, one to each property, are required. The responsibility to resolve this condition is solely on the owners of the commercial properties, Mr. Craft and McDonald's, and not DC Water's. [Emphasis added.]

Craft petitioned for an administrative hearing, which was held on March 1, 2016.[5] The petition alleged that from January 1974 to January 2014, Craft (and, before him, his father) paid DC Water for the water serving both lots — Craft's and McDonald's — and that Craft is therefore entitled to a refund totaling: (1) the $77,237.04[6] paid by McDonald's to DC Water, with "appropriate deductions for the retroactive credit [of $8,920.84] to [Craft's] account" paid by DC Water;[7] (2)

---

[5] We omit references to pre-hearing procedural skirmishes not relevant to our decision.

[6] Craft alleges that this number is based on water bills that McDonald's paid between November 2003 and January 2015 (which Craft alleges, without corroboration, totaled $77,237.04). Through a process of extrapolation, Craft claims that "it is reasonable to assume that the water bills generated by the restaurant over the previous 29 to 30 years would amount to several Hundred Thousand Dollars." No bills, however, were presented at the hearing or otherwise included in the record on appeal.

[7] As elaborated below, despite its legal position that Craft was responsible "for all water use recorded on the meter assigned to his account," DC Water, as a

(continued . . .)

"an amount equal to all water bills paid by [McDonalds] from October 1974 to October 2002"; (3) "appropriate interest on the refund amounts above"; and (4) other relief deemed "just and appropriate."

At the hearing before a DC Water hearing officer, Craft testified he had learned from his father that, when the Craft family purchased its lot "from McDonalds"[8] forty years earlier, his father thought that McDonald's had "fixed" the water meter to serve only the Craft lot. However, "for forty years" (apparently without investigation), his father kept "scratching his head" at the "high water bills." Thus, when appellant Craft took over responsibility for the family property, he contacted DC Water in October 2012 with an unjust enrichment theory: that the Crafts were receiving bills not only for the water they used but also for the water consumed by McDonald's on the next lot — a situation that DC Water, in April 2013, confirmed as true. To document this contention in his Claim for Refund, Craft quoted from an email of June 25, 2014, from Laura Preston, DC Water's Customer Service Director, to a member of the D.C. Council staff:

—————————————

(. . . continued)
"courtesy," credited Craft with overpayments representing water that flowed to McDonald's property.

[8] Craft was referring, presumably, to the McDonald's Real Estate Company. See *supra* note 2.

> The way the current construction works, all of the water [which] goes through the meter for both properties goes through Mr. Craft's meter first inside his property boundary, and then some of it is diverted and goes to Mr. Mateos' restaurant, where it is metered again. We send two bills — one to [Craft] and one to [McDonald's].

After using this excerpt to explain the current situation, Craft summarized the history of his water bills, as described in the email:

> Effective January 1, 2014, DC Water instituted a "special arrangement" for the benefit of [Craft] and [McDonald's] in which DC Water calculates their bills under the following new formula: ". . . we take all of the water that shows up in [McDonald's] meter and subtract it from [Craft's] bill so that Mr. Craft is only billed for the net amount that he and his neighbors. . . use."
>
> As for the issue of double billing, [Craft] was given a "retroactive credit" in the amount of $8,920.84. This figure was based on the amount of water billed to McDonald's from March 2013 until January 2014.[9]

---

[9] DC Water's credit arrangement for Craft, beginning in January 2014 with credit retroactive to March 2013, was developed not long after Craft contacted DC Water in October 2012 about alleged overbilling. DC Water discovered defective conditions in Craft's "meter vault," which Craft did not have repaired until on or about November 6, 2013, when a new water meter was installed — again (apparently) for the water consumed on both lots. In the meantime, in order to estimate water usage limited to Craft until the meter was repaired, DC Water based the bills "on the number and types of business in Mr. Craft's side of the property." Thereafter, beginning in January 2014 with the new meter in place, the bills reflected "actual meter readings," less the amount billed to McDonald's.

Craft understood this email to reflect DC Water's acknowledgement that, over time, he had been paying the water bill for *both* lots, in addition to McDonald's payment for its own lot, resulting in double-billing for McDonald's water. However, Craft does not dispute the "special" credit arrangement reflected in Ms. Preston's email. Rather, he argues that the refunds to date have been too meager. He therefore asks for a larger refund based on a new calculation: (1) total all the water bills to McDonald's to be found in DC Water's records; (2) use "yearly averages" to calculate McDonald's bills for earlier years, allowing for "fluctuations in water prices"; and (3) total those two amounts, adding "appropriate interest."[10]

A review of the record reveals that, for a substantial period, DC water essentially followed Craft's methodology in deducting McDonald's water usage from Craft's bill. To facilitate a long-term solution between Craft and McDonald's, DC Water provided Craft with a number of "courtesy" billing accommodations. The hearing officer found that, beginning March 27, 2013 — two months after the claim period permitted by the statute of limitations began[11] —

---

[10] See text surrounding *supra* notes 6 & 7.

[11] See *supra* note 1 and related text.

"DC Water stopped billing Craft based upon the water meter reading" for both lots. Instead, it "start[ed] estimating [Craft's] water usage" and "bill[ing] McDonald's separately for its water usage,"[12] an arrangement that (as noted in the Laura Preston email) yielded Craft an additional credit of $8,920.84 through January 29, 2014. Thereafter, "DC Water provided an accounting adjustment [that] subtracted any water billed to McDonald's from Mr. Craft's account as a courtesy." The hearing officer therefore agreed with DC Water's "characterization of how Mr. Craft's water bills have been handled by DC Water from the point that he raised his suspicion of double-billing." She concluded that "[t]he facts and evidence do not support Mr. Craft's allegation of double-billing." In other words, DC Water had cured the situation beginning March 27, 2013.

The idea underlying the courtesy adjustment was "to facilitate the property owners coming up with an agreement for separating the water line between their respective properties or devising an accounting arrangement between them." Although the record reflects an effort by Craft and McDonald's to negotiate such an agreement whereby McDonald's would pay Craft "for the use of the water

---

[12] See *supra* note 9 and related text.

line," it does not appear that this has occurred.[13] As a result, in its February 27, 2015, letter responding to Craft's claim, DC Water stated that it planned to "cease to do the courtesy accounting adjustment in May 2015" and urged Craft to work toward resolving the matter "quickly." According to a subsequent letter to Craft dated January 27, 2016 (an unrebutted exhibit at the hearing), DC Water indicated that in May 2015, it had extended the accounting adjustment through December 2015 and that it would do so, for the final time, at the end of "approximately 30 days," around the end of January 2016.

In sum, for the two-year period for which the statute of limitations had not run[14] (January 21, 2013, to January 21, 2015), the hearing officer found that Craft had received a courtesy adjustment from DC water for all but the first two months, January 21 through March 27, 2013. Significantly, the hearing officer also found that Craft had "provided no testimony or evidence to support an assertion that DC Water's accommodation to him and to McDonald's resulted in undercharge or overpayment [for] either property owner" after the end of March 2013. Craft has

---

[13] There are recent indications that negotiations have not been successful, as Craft has been enjoined from turning off the water to McDonald's lot. See *supra* note 2. Moreover, Craft's counterclaims were dismissed for failure to state a claim; *see McDonald's USA, LLC v. Craft*, 238 F. Supp. 3d 1, 1-2 (D.D.C. 2017).

[14] See *supra* note 1.

not challenged, let alone refuted, any of the facts and findings elaborated in this first part of our decision.

## II.     Hearing Officer Decision

The record supports the foregoing findings of the hearing officer, and from the discussion above, it is clear that the contested issues must be limited to Craft's charges for water during the limitation period of January 21, 2013, through January 21, 2015.  Craft raises three issues:  (1) the hearing officer erred in failing to admit in evidence the affidavit of Carlos Mateos, the "franchise owner" of McDonald's; (2) the hearing officer's "ruling that Craft failed to carry his burden of proof . . . is unfounded"; and (3) the hearing officer's ruling was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

## A.

After acknowledging that the customer challenging a water bill has the burden of persuasion, Craft argues in his brief that the hearing officer's refusal to admit in evidence the affidavit of Carlos Mateos was an abuse of discretion because that affidavit would have "assist[ed] in establishing the usage and billing of water for McDonald's during the times herein discussed."  The hearing officer

observed, however, that the affidavit was unsigned, that Mateos was not present at the hearing, and that the lack of verification was of "potential prejudice to DC Water."

In response, counsel for Craft represented that he "had a signed affidavit by Mr. Mateos, but he was unable to locate the document" — a representation that did not persuade the hearing officer. Even without regard to whether the affidavit was inadmissible hearsay, we are satisfied that the hearing officer did not abuse her discretion when refusing to admit a defective affidavit in evidence.

After the hearing, however, Craft sought reconsideration, this time proffering the affidavit signed, dated, and notarized. The hearing officer was unmoved. Acknowledging that some affidavits, although hearsay, can be admissible in administrative proceedings,[15] she denied reconsideration because Craft had "ample opportunity" during the hearing to introduce an "acceptable affidavit by Mr. Mateos"; Craft failed to "request leave to submit an executed

---

[15] *See Compton v. District of Columbia Bd. of Psychology*, 858 A.2d 470, 476 & n.8 (D.C. 2004) ("unless it is irrelevant, immaterial, or unduly repetitious, hearsay is admissible in administrative proceedings" (citing D.C. Code § 2-509 (b) (2001)).

version of the affidavit post-hearing," before the record closed; and in any event, "DC Water lacked opportunity to examine the statements, allegations and version of events addressed in the document." Again, we perceive no abuse of discretion.

The affidavit has seven short paragraphs averring that: (1) Matteos owns the McDonald's franchise; (2) his restaurant borders the Craft lot; (3) the two properties "share a common water line"; (4) his schedule does not permit his appearance at the hearing; (5) based on Craft's concerns about "the amount of his water bills and the operation of the water meters servicing the properties," a meeting was held at the McDonald's restaurant in May 2014, with eight persons present: Craft and his advisor, Mateos and his representative, an aide to D.C. Council member Alexander, and three DC Water representatives; and (6) he cannot recall the names of the three DC Water representatives, although he proffered their descriptions. Matteos then added a seventh paragraph: that (a) "as far back as they could research, McDonald's had an active meter and was paying for the water coming into the McDonald's property"; that (b) "DC Water could not distinguish" the amounts of water used by the individual businesses on Craft's property; that (c) until Craft "brought it to their attention," DC Water was "billing Mr. Craft for the water consumed" by McDonald's, and "also billing [Mateos] for the same water use"; and that (d) upon learning of the situation from Craft, DC Water "began

looking at [McDonald's] meter reading and deducting the amount of [that] meter reading from the total of Mr. Craft's water bill."

The first six paragraphs of the affidavit add nothing of substance to Craft's claim. Moreover, subsections (7)(a) and (7)(b) are easily dismissed, the first for vagueness, the second for irrelevance. Subsections (7)(c) and (7)(d), however, are more substantive. Taken together, these subsections essentially — though cryptically — reflect the "special arrangement" and $8,920.84 credit reflected in the Laura Preston email. Accordingly, because of this apparent consistency between Craft's demand and DC Water's response — a response applicable to virtually the entire limitation period for Craft's claim — the hearing officer's decision to exclude the affidavit has not prejudiced Craft. Its evidentiary weight would have been *de minimis*.

**B.**

Although the Mateos affidavit, in its last subsections, did not contradict DC Water's evidence, Craft did not concede its entire case. Thus, we turn to Craft's second contention: that the hearing officer erred in ruling that Craft had not carried his burden of proof to justify a refund.

*First*, we have noted that the claim must be limited to the two-year period of January 21, 2013, to January 21, 2015, not the forty years Craft proffered for a refund.

*Second*, upon asking for a hearing to challenge DC Water's refusal to honor his claim, Craft assumed responsibility to carry the burden of persuasion — "the ultimate 'burden of proof' by a 'preponderance of the evidence.'"[16] Acknowledging explicitly that Craft had presented a prima facie case supporting his claim,[17] the hearing officer found that DC Water had rebutted Craft's claim, to the point that Craft then had the burden of producing evidence sufficient to refute DC Water's evidence, in keeping with Craft's ultimate burden of persuasion, as claimant.[18] Craft failed to carry that burden. The record supports the hearing officer's finding (noted earlier) that Craft has "provided no testimony or evidence

---

[16] *Gatewood v. D.C. Water & Sewer Authority*, 82 A.3d 41, 51 (D.C. 2013).

[17] *See id.* at 52 (D.C. 2013) ("To carry [the] burden of persuasion at the hearing, . . . the customer must present a prima facie case showing that the customer was not responsible for the contested water use. If the customer does so, the burden of production shifts to the . . . utility . . . to respond with credible evidence in rebuttal. If the utility does make a sufficient showing, the customer must trump the utility's response with evidence sufficient to carry the burden of persuasion, which remains always with the customer").

[18] *See id.*

to support an assertion that DC Water's accommodation to him and to McDonald's resulted in undercharge or overpayment [for] either property owner." More specifically, in addition to lack of persuasive rebuttal testimony, Craft produced no water bills or other documentary evidence at the hearing (other than the defective Mateos affidavit) to support his claim. Nor did he refute, in any way, the evidence of credits granted by DC Water for Craft's overpayments, including the ongoing accounting adjustment summarized in part I. above — a regime consistent with subsections (7)(c) and (7)(d) of the Matteos affidavit that Craft proffered.

*Third*, DC Water acknowledged that its "courtesy adjustments" did not cover the first two months of the two years that survived the statute of limitations, namely, January 21 through March 27, 2013. On the other hand, we do not know what Craft's claim for this period would have been. He produced no water bills or other evidence that would substantiate any claim to a refund for those first two months. Thus, the hearing examiner did not err in declining to find DC Water liable for those months (among others).[19]

---

[19] We have previously noted, see *supra* note 9, that during DC Water's investigation of Craft's first contact with the utility in October 2012, DC Water discovered that, because of the deteriorating "condition of the plumbing" in Craft's meter vault, Craft apparently had been receiving "estimated meter readings,"

(continued . . .)

*Finally*, we reaffirm the validity of DC Water's legal premise underlying its response to Craft's claim, quoted at length above (in the first paragraph of part I.) from Laura Preston's February 27, 2015, letter to Craft: aside from issues of meter malfunction (irrelevant here), DC Water's responsibility for water line infrastructure on a property ends at the property line.[20] The difficulties caused by a single water line extending through the Craft and McDonald's lots are therefore the responsibility of the owners themselves to correct. We agree with the hearing officer:

> The water meter is on Craft property and, as owner, Mr. Craft was/is responsible for payment of water and sewer services and charges[,] and if McDonald's is piggy backing its water usage through Mr. Craft's water meter, the dispute for payment of the bill is between the

---

(. . . continued)

covering both lots, based on typical business usage. In fact, according to Laura Preston's email of June 25, 2014, Craft had received estimated readings "almost every month since at least 2008 until January 2014" because "the vault and valves connecting the meter that serves both properties [were] in disrepair, and Mr. Craft delayed repairing . . . the equipment for at least two years." From this explanation, it appears that the problem was disintegration of connections to the water meter (Craft's responsibility), not malfunction of the meter itself (DC Water's responsibility). See *supra* note 4. In any event, Craft has not claimed meter malfunction as a cause contributing to the double-billing he alleges in this case. His only concern about the water meter was reflected in his claim based on water usage between July and October, 2014, which the court dismissed because of Craft's failure to appear at the hearing. See *supra* note 3.

[20] See *supra* note 4.

> property owners. DC Water provides the service[,] and the property owners must decide how to share the cost or divide the line on their respective properties.

It follows, as DC Water has explained, that the equitable allocation of water bills that DC Water made for the parties over almost a two-year period was indeed a "courtesy," terminable at will, "and not a duty."

## C.

Craft's third and last claim of error says only that the hearing officer's ruling failed because, in the words of our standard of review, it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."[21] We have found no abuse of discretion in the hearing officer's rulings; implicitly, therefore, we have seen nothing arbitrary or capricious in those rulings; and, finally, Craft has not explained in other ways why he believes that the hearing officer acted outside the law. This contention, therefore, also fails.

---

[21] D.C. Code § 2-510 (a)(3) (2001).

### III. Conclusion

This case is resolved by four determinations of the hearing officer. *First,* she limited the scope of Craft's claim to a two-year period beginning January 21, 2013, as required by the applicable statute of limitations. *Second,* she concluded that, beginning March 27, 2013, DC Water properly allocated water bills to Craft and McDonald's, respectively, through necessary estimates, metering, and courtesy cost adjustments to the date of the claim, January 21, 2015, and thereafter through January 2016. *Third*, she found no water bills or other evidence of record that would justify DC Water's liability for a refund to Craft covering the two-months at the beginning of the limitation period, January 21, 2013, through March 27, 2013, for water entering the Craft and McDonald's lots through the single water line serving both. *Finally*, as to the future, the hearing officer concluded, as a matter of law, that until separate meters or an arrangement between Craft and McDonald's could be accomplished, Craft was responsible for paying the water bill for the single line extending through both the Craft and McDonald's lots,[22] and thus that DC Water's willingness — for two months shy of two years — to allocate the billing between the two parties had been a "courtesy," not a legal obligation,

---

[22] See *supra* note 4 and accompanying text.

subject to cancellation by DC Water without liability. The facts and the law support these determinations.

*****

For the reasons set forth above, the hearing officer's decision is affirmed.

*So ordered.*